## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| KASHIF AFTAB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case Number: 1:07-CV-2080-RWR |
| EMILIO T. GONZALEZ, Director, | ) | |
| U.S. Citizenship and Immigration Services, et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____)

### MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER

Defendants Emilio T. Gonzalez, et al., through undersigned counsel, hereby move for dismissal of the complaint pursuant to Rule 12(b)(1) for lack of jurisdiction.  In the alternative, Defendants move that the case be transferred to the Northern District of Texas.  A proposed order and memorandum of points and authorities are attached hereto.

Dated: February 22, 2008                    Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____/s/_____
BRANDON L. LOWY
Special Assistant United States Attorney
555 Fourth St., N.W.
Washington, DC  20530
Phone: (202) 307-0364 Fax: (202) 514-8780
Brandon.Lowy@usdoj.gov

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                  )
KASHIF AFTAB,                                     )
                                                  )
                        Plaintiff,                )
                                                  )
            v.                                     )
                                                  )   Case Number: 1:07-CV-2080-RWR
EMILIO T. GONZALEZ, Director,                     )
U.S. Citizenship and Immigration Services, <u>et al.</u>  )
                                                  )
                        Defendants.               )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR IN THE**
**ALTERNATIVE TO TRANSFER**

**<u>INTRODUCTION AND SUMMARY</u>**

Plaintiff, Kashif Aftab asks this Court to order United States Citizenship and Immigration

Services ("USCIS") to complete its adjudication of his Form I-485 "adjustment of status"

application. Plaintiff also seeks lawful permanent resident status.  USCIS has not completed its

adjudication of Plaintiff's I-485 application because it requires further inquiry by USCIS in light of

the information obtained through the security check process.  Congress has expressly withdrawn

federal court jurisdiction over the discretionary judgments, actions, and decisions USCIS makes

when reviewing petitions for immigration benefits.  Hence, the Court lacks jurisdiction to

intervene in the adjudication process, and Plaintiff's complaint should be dismissed.

In the alternative, Defendants move to transfer this case to the United States District

Court for the Northern District of Texas.  Plaintiff resides in Texas, and the only nexus between

this District and the case is the fact that the agency heads named as defendants have offices in

D.C.  However, most of the events giving rise to this complaint — namely, the processing and

adjudication of Plaintiff's I-485 — involve adjudicative actions that have been and will be taken

by USCIS staff at the Texas Service Center.  Accordingly, the Northern District of Texas is a more appropriate forum for this case than this Court, and the interests of justice support transfer.


## BACKGROUND

**A.**      **Statutory and Regulatory Background**

       1.      <u>Adjustments of Status and Background Investigations</u>

The Immigration and Nationality Act permits the Attorney General "in his discretion and under such regulations as he may prescribe," to adjust the status of an alien "to that of an alien lawfully admitted for permanent residence."  8 U.S.C. § 1255(a).  Aliens that seek such adjustments of status file applications referred to as an "I-485."  The procedures for admitted aliens to apply for adjustment of status are set forth at 8 C.F.R. part 245.

USCIS processes adjustment applications in chronological order based on the date of receipt.  Neither the statute nor the regulations establish a time frame in which adjudication must occur.  The applicant must show that (s)he is not inadmissible to the United States under any statutory ground of inadmissibility set forth at section 212(a) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a), including health-related, criminal, terrorist, and other grounds.  <u>See</u> 8 U.S.C. § 1255(a)(2).  An alien seeking adjustment of status bears at all times the burden of persuading the Attorney General to exercise his discretion in the alien's favor.  <u>See</u> <u>Randall v. Meese</u>, 854 F.2d 472, 474 (D.C. Cir. 1988); <u>Jain v. Immigration and Naturalization Service</u>, 612 F.2d 683, 687 (2d Cir. 1979); <u>see</u> <u>generally</u> <u>Elkins v. Moreno</u>, 435 U.S. 647, 667 (1978) ("... adjustment of status is a matter of grace, not right ...").

Before a decision is rendered on an alien's I-485 application for adjustment of status, USCIS requests that the FBI conduct a national security screening. See Declaration of Genize Walker, ¶ 9 (Exh. 1) ("Walker Decl."). These checks currently include: (a) an FBI fingerprint check for relevant criminal history records on the applicant; (b) a check against the Interagency Border Inspection System (IBIS), which is managed by the Department of Homeland Security and contains records and "watch list" information from more than twenty law enforcement and intelligence agencies; and (c) an FBI name check. See Id. ¶ 9; see also 8 U.S.C. § 1105(a) (authorizing "direct and continuous liaison" with the Directors of the FBI and CIA to obtain and exchange information for use in enforcing the INA and in the interest of the internal and border security of the United States). When the FBI searches a person's name, the name is electronically checked against the FBI's Universal index. Declaration of Michael Cannon, ¶ 11 (Exh. 2) ("Cannon Decl."). The searches seek all instances of the individual's name, social security number, and dates close to his or her date of birth, for both "main" (subject of an FBI investigation) files and "reference" (individual whose name appears as part of an FBI investigation, including associates, witnesses, and conspirators) files. See Id. There may be a myriad of other reasons to explain why an FBI Special Agent conducting an investigation believed it important to include a particular name in the FBI's index for later recovery. Id. If there is a match with a name in a FBI record, it is designated as a "Hit," meaning that the system has stopped on a possible match with the name being checked. Id. ¶ 12. These security checks sometimes raise issues impacting an applicant's eligibility for the benefit sought from USCIS. See Walker Decl. ¶ 9. The FBI forwards a summary of any derogatory information retrieved

during its name check to USCIS.  See Cannon Decl. ¶ 17.  In those cases, USCIS must conduct

further inquiry to resolve any outstanding issues.  Walker Decl. ¶ 9.

     In many cases, adverse information related to an applicant or beneficiary that is obtained

through a security check requires further inquiry by USCIS, including outreach to the originating

agency to determine whether the information is relevant to eligibility for the requested

immigration benefit or may lead to other information bearing on eligibility. Id. ¶ 12.  USCIS

frequently must take additional steps to fully assess an applicant's background, such as an

interview, a written request for additional information, or a field investigation. See id.  The

background checks are not considered complete until USCIS conducts a comprehensive review

of any identified criminal or national security issues and any such issues are resolved.  Id.

USCIS then completes the adjudication, issues its decision and takes any further action

appropriate under the circumstances.  Id.

2.    Judicial Review of Immigration-Related Decisions

     In 1996, Congress passed legislation to reduce, and in some cases eliminate, judicial

review of certain immigration-related decisions made by the former Immigration and

Naturalization Service ("INS").  See Sec. 306, Illegal Immigration Reform and Immigration

Responsibility Act of 1996 (IIRIRA), Pub. L. 104-208, 110 Stat. 3009 (September 30, 1996).  In

particular, 8 U.S.C. § 1252(a)(2)(B)(ii), divests courts of jurisdiction to review any "decision or

action of the Attorney General the authority for which is specified … to be in the discretion of

the Attorney General, other than the granting of [asylum]."

     Because some courts, contrary to Congress' desires, found that this jurisdiction-stripping

bar applied only to discretionary decisions made during removal (deportation) proceedings, on

5

May 11, 2005, Congress amended Section 1252(a)(2)(B)(ii) to clarify that its proscription against judicial review applies regardless of whether the discretionary judgment, decision or action is made in removal proceedings.  See Section 101(f), Real ID Act of 2005, Pub. L. 109-13, Div. B, 119 Stat. 231; see also House Conference Report 109-72 at 170 (May 3, 2005).  The REAL ID Act also added references to the Secretary of Homeland Security consistent with the reorganization of INS (under the Attorney General and U.S. Department of Justice) into USCIS (under the Department of Homeland Security).  Id.  After passage of the Real ID Act, the statute reads as follows:

> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review-
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(I), 1229b, 1229c, or 1255 of this title, or
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. 1252(a)(2)(B).

**B.    Plaintiff's Application**

Plaintiff Kashif Aftab, a national of Pakistan, filed a Form I-485 application to register permanent residence or adjust status on October 4, 2002.  See Compl. ¶ 2, 10; Walker Decl. ¶ 6. That application was filed with USCIS's Vermont Service Center.  Compl. at ¶ 15.  Plaintiff Aftab attended fingerprint appointments on December 3, 2002, and August 21, 2004.  Compl. at ¶ 15, 16.  Plaintiff responded to a USCIS Request for Evidence on November 23, 2004.  Compl. at ¶ 16.  On August 8, 2005, and August 8, 2006, Plaintiff filed change of address forms with

USCIS, indicating that he had moved to a new address in Texas.  Compl. at ¶ 17.  On February 24, 2007, USCIS transferred Plaintiff's adjustment of status application to its Texas Service Center for further processing.  Compl. at ¶ 18.  Plaintiff responded to a second USCIS Request for Evidence on April 16, 2007.  Compl. at ¶ 20.  Plaintiff Aftab attended a third fingerprint appointment on May 11, 2007.  Id.  On October 12, 2007, Plaintiff wrote to the Texas Service Center to indicate his intention to file a Writ of Mandamus.  Compl. at ¶ 21.

USCIS submitted fingerprint checks of the applicant to the FBI on or around December 3, 2002, which were received by the FBI on December 29, 2002.  See Walker Decl. ¶ 14; Cannon Decl. ¶ 41.  USCIS received the results of that fingerprint check from the FBI on or around September 21, 2006.  See Walker Decl. ¶ 14.  The information received to date requires further inquiry and review.  Id.  USCIS is making every effort to promptly adjudicate Plaintiff's adjustment of status application.  Id.

Plaintiff initiated this action with a mandamus complaint filed on November 15, 2007. Plaintiff asks the Court to compel Defendants to perform their duty to adjudicate the Plaintiff's adjustment of status application without further delay.  Compl., Prayer ¶ a.

**STANDARD OF REVIEW**

Defendants move for dismissal under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to review Plaintiff's claim.  See Fed. R. Civ. P. 12(b)(1).  When reviewing a 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  Thompson v. Capitol Police Bd., 120 F. Supp.2d 78, 81 (D.D.C. 2000) (citations omitted); see also Vanover v. Hantman, 77

F. Supp.2d 91, 98 (D.D.C. 1999).  "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations."  Rann v. Chao, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), aff'd, 346 F.3d 192 (D.C. Cir. 2003).  In addition, plaintiffs bear the burden of persuasion, and must establish subject-matter jurisdiction "by a preponderance of the evidence."  Thompson, 120 F. Supp.2d at 81; Vanover, 77 F. Supp.2d at 98.  To determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence.  See Herbert v. Nat'l Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992); Rann, 154 F. Supp. at 64.

## ARGUMENT

## I.  THE COURT LACKS SUBJECT MATTER JURISDICTION TO REVIEW PLAINTIFF'S CLAIM.

"Federal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by Constitution and statute."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); see also Shaffer v. Veneman, 325 F.3d 370, 372 (D.C. Cir. 2003) (noting that district courts "have only such jurisdiction as the Constitution and the Congress grant them").  The statutes cited in the complaint do not establish a statutory basis for the Court to exercise jurisdiction over this case.  The Court lacks jurisdiction to review Plaintiff's challenge to USCIS's processing of his I-485 application because Section 1252 of the INA precludes judicial review of USCIS's "judgments" on applications for adjustment of status, and of numerous other discretionary decisions and actions involving immigration-related applications and proceedings.

8

8 U.S.C. § 1252(a)(2)(B).  That provision applies "notwithstanding any other provision of law," thereby trumping any alternative source of jurisdiction.  Id.  USCIS has broad discretion to determine the pace and manner of adjudicating adjustment of status applications.  Accordingly, there would be no Administrative Procedures Act ("APA") or mandamus jurisdiction over Plaintiff's challenge to that process even if the INA did not preempt other sources of jurisdiction.

**A.     8 U.S.C. § 1252(a)(2)(B) Divests This Court of Jurisdiction Over Plaintiff's Challenge to USCIS's Adjudication of His Application.**

Section 1252(a) of the INA expressly precludes judicial review of adjustment of status applications and other discretionary decisions.  As noted supra, Section 1252(a)(2)(B), provides that "no court shall have jurisdiction to review:"

> (i)     any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> (ii)    any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title to be in the discretion of the Attorney General or the Secretary of Homeland Security, . . . .

8 U.S.C. § 1252(a)(2)(B) (emphasis added).   In seeking to compel the adjudication of an adjustment of status application under 8 U.S.C. § 1255, Plaintiff's claims fall squarely within the plain meaning of each of these terms.

Section 1252(a)(2)(B)(ii) divests this Court of subject matter jurisdiction over Plaintiff's claim because the adjudication of an adjustment of status application is a discretionary action and decision.  "[T]his subchapter" refers to Subchapter II of Chapter 12 of Title 8 of the U.S. Code, which is composed of 8 U.S.C. §§ 1151 through 1378.  Section 1255(a), which grants the Attorney General discretionary authority to adjudicate adjustment of status applications, is thus part of Subchapter II.  The "authority" for adjudicating adjustment of status applications is

expressly "in the discretion of the Attorney General," pursuant to Section 1255(a).  See 8 U.S.C.

§ 1255(a) (providing that an alien's status "*may* be adjusted by the Attorney General, *in his*

*discretion* and under such regulations as he may prescribe."  Id. (emphasis added)).  The statute

provides no time frame for the adjudication of I-485 applications, and gives the Attorney General

complete discretion to prescribe any appropriate regulations.  See Id.  The Attorney General's

discretion over the process of adjudicating an I-485 necessarily extends to the assessment of

when, whether, and how to grant that application.

     Plaintiff Aftab is seeking judicial review of both an agency decision and agency action.

USCIS has, at this time, made a *decision* that it cannot immediately complete its adjudication of

Aftab's application because it requires further inquiry by USCIS in light of the information obtained

through the security check process.  This case also involves agency *action*.  The word "action" is

not limited to a single act, but also includes an ongoing process or a series of acts.  See Safadi,

466 F. Supp. 2d at 699 (citing Black's Law Dictionary 28 (6th ed. 1990) defining action as

"[c]onduct; behavior; something done; the condition of acting; an act or series of acts.");  see also

Grinberg v. Swacina, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007) (finding initiation of

background checks was action); Zhang v. Chertoff, 491 F. Supp. 2d 590, 594 (W.D. Va. 2007)

("the preclusion of judicial review over a discretionary act of USCIS encompasses . . . the pace

of this process").  As explained in the Walker declaration, USCIS is engaged in the continuing

"action" of adjudicating Aftab's adjustment application by inquiring as to whether information

obtained by the FBI security check is relevant to his eligibility.  See Walker Decl. ¶ 12.  Thus

this is not a case in which an agency has refused to act.  Instead, the alleged delay is a direct

consequence of USCIS's conclusion that national security interests preclude it from completing

its adjudication of Aftab's application until its own inquiries following the FBI background

investigations are complete.  See Sayyadinejad v. Chertoff, 2007 WL 4410356, at *5 (S.D. Cal.

Dec. 14, 2007); see also Li v. Chertoff, 482 F. Sup. 2d 1172, 1177-78 (S.D. Cal. 2007).

        At bottom, Aftab takes issue with the fact that USCIS is still engaging in investigative

and evaluative activities to determine his eligibility.  He would have the Court order USCIS to

"immediately" adjudicate his application, notwithstanding the need for these critical inquiries

and notwithstanding that the decision whether to grant adjustment of status and when to do so is

completely discretionary.  However, USCIS's *decision* to continue evaluating Plaintiff's

application and the *action* it is taking in doing so lie within the discretion of the Attorney

General under § 1255(a).  Thus Section 1252(a)(2)(B)(ii) precludes judicial intervention in

USCIS's adjudicative process.  The withdrawal of subject matter jurisdiction in this regard is

consistent with the well-established proposition that judicial review in immigration matters is

narrowly circumscribed, see Reno v. Flores, 507 U.S. 292 (1993), and that control over

immigration is largely entrusted to the political branches of the government, see United States v.

Valenzuela-Bernal, 458 U.S. 858, 864 (1982); Mathews v. Diaz, 426 U.S. 67, 81 (1976).

        That statutory language has led numerous courts to conclude that Section

1252(a)(2)(B)(ii) bars judicial review of claims challenging aspects of the I-485 adjudicative

process.  See, e.g., Luo v. Keisler, 521 F. Supp. 2d 72 (D.D.C. 2007) (discussing Section

1252(a)(2)(B) and granting motion to dismiss action to compel adjudication of plaintiffs' I-485s);

Orlov v. Howard, 523 F.Supp.2d 30, 36 (D.D.C. 2007) ("Therefore, because the adjustment

process, including the pace of processing applications, falls within the discretion of USCIS, and

because the pace of processing applications, including completing security checks, constitutes an

"action" under the plain meaning of the word, judicial review of plaintiff's claim is precluded by

§ 1252(a)(2)(B)(ii)."); Sun v. Gonzales, 1:07-cv-00504 (JDB), Order, December 10, 2007 (Pacer

Dkt. 12) at 3 ("Because 8 U.S.C. § 1252(a)(2)(B)(ii) divests federal courts of jurisdiction to

review a discretionary decision or action of USCIS, and an 'action' includes any discretionary act

or series of acts within the adjustment of status process (including the pace of completing various

security checks), this Court lacks jurisdiction over plaintiff's petition.") (Exh. 3); Grinberg v.

Swacina, 2007 WL 840109 (S.D. Fla. March 20, 2007) (discussing Section 1252(a)(2)(B) and

granting motion to dismiss); Safadi v. Howard, 466 F. Supp. 2d 696 (E.D. Va. 2006) (same);

Sharkey v. Ganter, 2006 WL 177156 (S.D.N.Y.) (same); Dinsey v. Department of Homeland

Security, No. 03-10081, 2004 WL 1698630, at * 4 (S.D.N.Y. 2004) (finding no jurisdiction over

action to compel USCIS to adjudicate adjustment of status application because the INA

"expressly places the adjustment of immigration status within the discretion of the Attorney

General); see generally Zhu v. Gonzales, 411 F.3d 292, 294-96 (D.C. Cir. 2005) (concluding

1252(a) precludes judicial review of Attorney General's discretionary decision to  require party

to obtain labor certification prior to obtaining a work visa); Mahaveer, Inc. v. Bushey, No. 04-

1275, 2006 WL 1716723, at *3-*4 (D.D.C. June 19, 2006) (concluding 1252(a) bars review of

discretionary denial of visa).

      Defendants recognize that federal district courts are split on this issue, and that some

judges have concluded that they have jurisdiction to review the reasonableness of any delays in

completing adjudication of an I-485 petition.  Compare, e.g., Liu v. Novak, No. 07-263, 509 F.

Supp. 2d 1 (D.D.C. 2007) (exercising jurisdiction over claim alleging unreasonable delay in

resolving adjustment of status application); Alsharqawi v. Gonzales, No. 06-1165, 2007 WL

1346667 (N.D. Tex. Mar. 14, 2007) (same) with Luo, 521 F. Supp. 2d at 72 (dismissing claim

alleging unreasonable delay in resolving adjustment of status application for lack of jurisdiction);

Orlov, 523 F.Supp.2d at 36 ("judicial review of plaintiff's claim of delay in the adjustment

process is precluded by § 1252(a)(2)(B)(ii)"); Sun, 1:07-cv-00504 (JDB), Order, December 10,

2007 (Pacer Dkt. 12) at 3 ("this Court lacks jurisdiction to review the ongoing pace at which

plaintiff's application [Form I-485] is being adjudicated."); Elzer v. Mueller, No. 07-01666, 2007

WL 1221195 (E.D. Pa. Apr. 23, 2007) (dismissing challenge for lack or jurisdiction); Grinberg,

478 F. Supp. 2d at 1352 (same).  However, the D.C. Circuit has not yet addressed the issue, and

the other courts' rulings are not binding on this Court.  As the foregoing discussion makes clear,

the INA's jurisdiction-stripping provisions are best read as precluding judicial review of Plaintiff

Aftab's claims concerning the adjustment of status application. "[T]he determination that §

1252(a)(2)(B)(ii) precludes judicial review over plaintiff's claim is further supported by the

general rule that courts should refrain from interfering with matters of immigration and national

security."  Orlov, 523 F.Supp.2d at 36.

**B.    No Other Statute Gives the Court Jurisdiction to Review Plaintiff's
         Challenge to the Pace of the Adjudication of His I-485 Application.**

Even if some other statute conferred jurisdiction to review Plaintiff's request for

immediate adjudication of his application, the INA would foreclose the exercise of that

jurisdiction because it applies "notwithstanding any other provision of law (statutory or

nonstatutory)." 8 U.S.C. § 1252(a)(2)(A); see Luo, 521 F. Supp. 2d at 74 n. 4 (citing INA and

noting that it specifically precludes judicial review "notwithstanding any other provision of

law"); Orlov, 523 F.Supp.2d at 34 ("under 8 U.S.C. § 1252(a)(2)(B)(ii) Congress clearly

intended to preclude judicial review in this situation [delays in the adjustment process]"); Sun,

1:07-cv-00504 (JDB) at 3 (citing INA and noting that it "divests federal courts of jurisdiction to

review a discretionary decision or action of USCIS"); Danilov v. Aguirre, 370 F. Supp. 2d 441,

445 (E.D. Va. 2005) (Ellis, J.) ("[I]t is well settled that general grants of jurisdiction may not be

relied upon to expand a very specific statute that either grants or limits jurisdiction.").  However

there is no alternative source of jurisdiction in this case.  The Mandamus Act does not apply

because the process of adjudicating Plaintiff's application involves discretionary acts and

decisions.  The Administrative Procedure Act is inapplicable for similar reasons.  The FBI has

plenary discretion over the terms on which its national security investigations are conducted.

Accordingly, neither the Mandamus Act nor the APA empowers this Court to compel the FBI to

complete its investigation of Plaintiff's background within 30 days or any specific period of

time.

1.    The Mandamus Act Does Not Confer Jurisdiction Because the
        Adjudication of Plaintiff's Application Is A Discretionary Process.

The Mandamus Act would not confer subject matter jurisdiction even if the jurisdiction-

stripping provisions of INA § 242 did not apply.  That statute gives district courts "original

jurisdiction of any action in the nature of mandamus to compel an officer or employee of the

United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

The writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary

causes."  Cheney v. United States District Court, 542 U.S. 367, 380 (2004) (internal quotations

and citation omitted); accord Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980).

District courts may issue a writ of mandamus only if three elements are met: "(1) the plaintiff has

14

a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." In re Medicare Reimbursement Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005); see also Heckler v. Ringer, 466 U.S. 602, 616 (1984) (noting that defendant must owe plaintiff "a clear nondiscretionary duty" and that all other remedies must be exhausted). Even when those factors are present, "a court may grant relief only when it finds 'compelling equitable grounds.'" In re Medicare Reimbursement Litigation, 414 F.3d at 10.

Here, Plaintiffs lack a clear right to immediate adjudication, and Defendants have no clear mandatory or ministerial obligation to adjudicate the applications or complete background checks within a particular time frame. See Luo, 521 F. Supp. 2d at 74 n.4; Orlov, 2007 WL 4293490 at 37; Sun, 1:07-cv-00504 (JDB) at 4; Safadi v. Howard, 466 F.Supp.2d at 700; Grinberg, 478 F. Supp. 2d at 1354. The decision whether to grant or deny Aftab's adjustment application is plainly discretionary by statute. See 8 U.S.C. § 1255(a). Surely, that discretion permits USCIS to enforce a background check requirement thereby ensuring that immigration benefits are not granted to an alien ineligible for the benefit due to fraud, criminal convictions, or national security matters. There are no statutory provisions or regulations that mandate the adjudication of adjustment applications within a particular time frame. Consequently, USCIS has no clear, mandatory duty to finish adjudicating Plaintiff's application prior to completion of background checks, or by a prescribed deadline. Likewise, Plaintiff can point to no clear and indisputable right to have the background checks completed within a specific time frame. See Shalabi v. Gonzales, No. 06-866, 2006 WL 3032413, at * 5 (E.D. Mo. Oct. 23, 2006) (denying plaintiff's request that the court compel that plaintiff's background check be expedited). Those factors have led numerous district courts to find that mandamus relief is unavailable in cases

such as this.  See, e.g., Orlov, 523 F.Supp.2d at 37; Sun, 1:07-cv-00504 (JDB) at 4; Li, 482 F.

Supp. 2d at 1177; Grinberg, 478 F. Supp.2d at 1354; Safadi, 466 F. Supp.2d at 700; Saleh v.

Ridge, 367 F. Supp.2d 508, 511 (S.D.N.Y. 2005); Karan v. McElroy, No. 02 Civ. 6678 (JGK),

2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003); Zheng v. Reno, 166 F. Supp.2d 875, 880

81 (S.D.N.Y. 2001); Sadowski v. INS, 107 F.Supp.2d 451, 453 (S.D.N.Y. 2000).  This Court

should do the same.

> 2.     The Administrative Procedures Act Does Not Permit This Court to
>        Review Plaintiff Aftab's Challenge to USCIS's Processing of His
>        Application.

Plaintiff also has no right to judicial review under the APA.  Although the APA is not an

independent source of subject matter jurisdiction, it operates in tandem with federal question

jurisdiction under 28 U.S.C. § 1331 to permit courts to review challenges to certain agency

actions.  See Califano v. Sanders, 430 U.S. 99, 107 (1977); Grinberg, 478 F. Supp. 2d at 1355;

Galluci v. Chao, 374 F. Supp. 2d 121, 128 (D.D.C. 2005).  However, the APA expressly

precludes judicial review of agency actions in two circumstances: (1) if another statute

"preclude[s] judicial review;" and (2) when "agency action is committed to agency discretion by

law."  5 U.S.C. § 701(a)(2); Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986).  Both factors

prevent Plaintiff from using the APA as a means of challenging USCIS's processing of his

application and/or the FBI's processing of Aftab's background checks.

First, as discussed above, the INA bars judicial review of challenges to the adjustment of

status adjudication process.  Accordingly, Section 701(a) of the APA, which "withdraws [an

APA] cause of action" to the extent another statute "precludes judicial review," prevents Plaintiff

from raising an APA challenge concerning the adjudication of his adjustment of status application. Block v. Community Nutrition Inst., 467 U.S. 340, 345 (1984); see 5 U.S.C. § 701(a); Beyond Pesticides v. Whitman, 360 F. Supp. 2d 69, 71 (D.D.C. 2004); see generally Bruno v. Albright, 197 F.3d 1153, 1161-62 (D.C. Cir. 1999) (concluding that "the immigration laws preclude judicial review of consular visa decisions" and therefore bar APA challenges to a visa decision). Section 702 forecloses judicial review of Plaintiff's challenge to the adjudication of his application for the same reason, as it provides that "nothing herein affects other limitations on judicial review . . . or confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

Second, the APA bars judicial review of all of Plaintiff's claims because the USCIS actions Plaintiff has challenged are discretionary. The APA generally permits challenges to "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); see also 5 U.S.C. § 555(b) (indicating that agencies should conclude matters "within a reasonable time"). However, such claims are unreviewable by the courts if the relevant agency action is "committed to agency discretion by law." Id. § 701(a)(2); see also Orlov, 523 F.Supp.2d at 37 (quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66 (2004) ("a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."). In Heckler v. Chaney, the Supreme Court interpreted 5 U.S.C. § 701(a)(2) to mean that "review is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." 470 U.S. 821, 830 (1985). As the Court explained, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate

agency action for 'abuse of discretion.'"  Id.; see also Steenholdt v. Federal Aviation Admin., 314 F.3d 633, (D.C. Cir. 2003) (articulating same standard).  "The principal purpose of the APA limitations . . . and of the traditional limitations upon mandamus from which they were derived- is to protect agencies from undue judicial interference with their lawful discretion . . . ."  Norton v. So. Utah Wilderness Alliance, 542 U.S. 55, 66 (2004).

        Plaintiff has no APA cause of action for "unreasonable agency delay" against USCIS because the timing of USCIS's adjudication of his application --- which includes its review of the information yielded through the security investigations --- is expressly committed to agency discretion, as are all other aspects of processing the applications.  Section 1255(a) permits the Attorney General to adjust an alien's status "*in his discretion* and under such regulations as he may prescribe."  8 U.S.C. § 1255(a) (emphasis added).  That is the type of "plenary" grant of discretion which renders agency actions unreviewable under the APA.  Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151, 157 (D.C. Cir. 2006).  No statutory or regulatory provisions provide a "meaningful standard" against which to measure USCIS's process of adjudicating such an application.  Heckler, 470 U.S. at 830.  Rather, the agency maintains complete discretion to determine "how and when" to adjudicate the application.  See Id.  In contrast with certain other immigration provisions, e.g., 8 U.S.C. § 1447(b), the statute and regulations governing Plaintiff Aftab's adjustment of status application provide no time frame for when such an application must be adjudicated.  See Orlov, 523 F.Supp.2d at 37 ("[T]here are no statutory guidelines compelling USCIS to adjudicate adjustment of status applications within a certain period of time.");  Zheng, 166 F.Supp.2d at 879 ("[T]here is no requirement that the application be decided within a specific period of time[.]").  Consequently, there is no standard against which the Court

18

can measure whether USCIS has acted "within a reasonable time," 5 U.S.C. § 555(b), or "unreasonably delayed" adjudication, Id. § 706(1). The fact that the adjudicatory process is committed to agency discretion by law renders claims relating to alleged delays in the adjudication of an adjustment of status application unreviewable under the APA. See Luo, 521 F. Supp. 2d at 74 n.4; Orlov, 523 F.Supp.2d at 37; Sun, 1:07-cv-00504 (JDB) at 4; Safadi, 466 F.Supp.2d at 700; Zheng, 166 F.Supp.2d at 878 89; Karan, 2003 WL 21209769, at *1 ("[B]ecause decisions regarding the plaintiff's immigration status are committed to the discretion of the INS, this Court lacks the authority under . . . the APA to grant the relief the plaintiff seeks."); see also Rahman v. McElroy, 884 F. Supp. 782, 787-88 (S.D.N.Y. 1995). In addition, at least two Supreme Court cases suggest that the presence of a specified time period triggers courts' ability to compel agency action that is "unreasonably delayed" under § 706(1). See Norton, 542 U.S. at 65 ("Thus, when an agency is compelled by law to act within a certain time period . . . a court can compel the agency to act . . . ."); Brock, 476 U.S. at 260 n.7 (finding that because "the statutory command that the Secretary 'shall' act within 120 days does not commit such action to the Secretary's discretion, . . . [t]he court would have the authority to 'compel agency action unlawfully withheld or unreasonably delayed,' § 706(1)").

Without any mandatory time frame to adjudicate Plaintiff's claim that USCIS has "unreasonably delayed" adjudication of the applications and the processing of Aftab's background checks, this Court would have to create a temporal standard out of whole cloth. This is a perilous task given the national security considerations that permeate USCIS's adjudicative process and the obvious national security interest in thorough and complete background checks. See Orlov 523 F.Supp.2d at 36 (declining "to impose an arbitrary deadline on USCIS for the

completion of such investigations" because "[i]nterference by this Court . . . could have national security implications"); see also Sayyadinejad v. Chertoff, 2007 WL 4410356, at *5 (S.D. Cal. Dec. 14, 2007) (recognizing that "any delay in adjudicating Plaintiff's adjustment of status application is not due to agency inaction, but rather to the time required to resolve all concerns of a … national security nature").  It is a well established proposition that judicial review of immigration matters is narrowly circumscribed, and that control over immigration is largely entrusted to the political branches of the government.  See Valenzuela Bernal, 458 U.S. at 864; Diaz, 426 U.S. at 81 ("Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary.").  Moreover, as other courts have cautioned, in "'matters solely within the INS's discretion[,] . . . aside from our powerlessness to intervene, the judicial creation of such a duty would have the potential for mischievous interference with the functioning of already overburdened administrative agencies.'" Rahman, 884 F. Supp. at 787 (quoting Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978)); see also Heckler, 470 U.S. at 831 82 (noting that "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities"); Luo, 521 F. Supp. 2d at 74 (concluding judicial intervention would be "inappropriate" given national security concerns).  Those principles counsel against the imposition of a judicially-created standard to gauge how long USCIS may wait for assurance that the background checks have identified no national security reasons that would merit denial of an applicant's adjustment application.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE CASE TO THE NORTHERN DISTRICT OF TEXAS.

This case is governed by the general venue statute, 28 U.S.C. § 1391, which establishes default rules for venue that apply to federal lawsuits where the underlying statutes do not specify their own venue rules.  See 28 U.S.C. § 1391(a), (b), and (e) (each applying "except as otherwise provided by law.").  Section 1391 identifies three possible bases for venue for claims against federal government officials or agencies: (1) where a defendant "resides;" (2) the district where "a substantial part of the events or omissions giving rise to the claim occurred;" or (3) where "the plaintiff resides, if no real property is involved in the action."  28 U.S.C. § 1391(e).  Plaintiff appears to rely on the first two prongs of this test, and allege that venue is proper in this Court because the agency heads named as Defendants have offices in the District of Columbia and formulate the policy regarding background checks.  See Compl. ¶ 9 n. 2.

When a plaintiff bases its venue arguments solely on federal agency defendants' presence in Washington D.C., the venue challenge should be examined "very closely."[1]  Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).  That close scrutiny has led courts in this District to invoke their transfer authority pursuant to 28 U.S.C. § 1404(a) and transfer cases to a district with a closer nexus to the parties' dispute.  See, e.g., Cameron, 983 F.2d at 256 (ruling Washington, D.C. was not the proper venue because the sole connection to Washington, D.C. was the inclusion of the Director of the Federal Bureau of Prisons and the Attorney General in their official capacities); Abusadeh v. Chertoff, 2007 WL 2111036, at *6-*9 (D.D.C. July 23,

---

[1] To the extent Plaintiff asserts that venue is proper in the District of Columbia because it is where "a substantial part of the events or omissions giving rise to the claim occurred," pursuant to 28 U.S.C. § 1391(e), the claim fails. Plaintiff summarily discounts the one year's time of processing that his application has undergone at the Texas Service Center, and has alleged no facts to support the claim that any events or omissions took place regarding Plaintiff's application in the District of Columbia.  See Compl. ¶ 9 n. 2

21

2007) (transferring mandamus action seeking adjudication of naturalization application and petition to replace alien card to Southern District of Texas because that was where the application was being adjudicated); Fayyaz v. Dep't of Homeland Security, No. 06-2016, (D.D.C. Oct. 25, 2007) (unpublished Order) (transferring mandamus action concerning I-485 to the Southern District of Texas because that is where plaintiff resided and the district in which the USCIS office with jurisdiction over their applications was located) (attached as Exh. 3 hereto); Poliakova v. Gonzales, No. 07- 1210 (D.D.C. Dec. 17, 2007) (Order attached hereto as Exh. 4) (transferring mandamus action concerning I-485 to Southern District of Florida for the same reason) ; Rosales v. United States, 477 F. Supp.2d 213, 215-17 (D.D.C. 2007) (transferring case against federal agency to district in which the challenged events took place); Southern Utah Wilderness Alliance v. Norton, 315 F. Supp.2d 82, 886-89 (D.D.C. 2005) (concluding environmental case should be transferred to Utah where D.C. officials only set general policies and did not make specific decisions being appealed); Joyner v. District of Columbia, 267 F. Supp.2d 15, 20 21 (D.D.C. 2003) (holding that the case's only connection to Washington, D.C. was the situs of named federal government defendants and transferring to a district with which the case had several connections).  Otherwise, "[b]y naming high government officials as defendants, a plaintiff could bring suit here that properly should be pursued elsewhere." Cameron, 983 F.2d at 256.

The fact that some of the Defendants are high government officials who reside in the District of Columbia does not establish a sufficient connection to this District, and the Court should transfer this case to the Northern District of Texas.  Section 1404(a) permits the Court to transfer this case to "any other district or division where it might have been brought" for the

"convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). A

threshold question is whether the case could have been brought in the district to which transfer is

sought. See Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citing Van Dusen v.

Barrack, 376 U.S. 612, 613 (1964)). The Court then must engage in a case by case analysis and

balance the private interests of the parties with public interests such as efficiency and fairness.

Id. at 29; Abusadeh, 2007 WL 2111036, at *3. The moving party bears the burden to establish

that it is proper to transfer the case. See Southern Utah, 315 F. Supp. 2d at 86. Trout Unlimited

v. United States Dep't of Agriculture, 944 F. Supp. 13, 16 (D.D.C. 1996) (citing Air Line Pilots

Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987) (citations omitted). Plaintiff

could have brought this case in the Northern District of Texas, and both the private and public

interests favor transfer to that court.

      The Northern District of Texas clearly is a district in which this case "might have been

brought." Plaintiff resides within that state. USCIS's Texas Service Center is responsible for

adjudicating Plaintiff's application; therefore any relief Plaintiff may obtain will involve that

office, which is located in Dallas, Texas. See Walker Decl. ¶ 1. In sum, the adjudication at issue

in this action is being conducted by USCIS staff located in the Northern District of Texas,

making venue proper in that court under 28 U.S.C. § 1391. See Abusadeh, 2007 WL 2111036,

at * 6 (concluding venue was proper in Southern District of Texas because I-485 was being

adjudicated there).

      The private interests favor transfer. The factors courts consider when assessing those

interests include: Plaintiff's choice of forum, Defendants' choice of forum, whether the claim

arose elsewhere, convenience of the parties, convenience of the witnesses, and ease of access to

sources of proof.  See Trout Unlimited, 944 F. Supp. at 16 (citation omitted).  Although courts

generally accord substantial deference to a plaintiff's choice of forum, that deference is lessened

when the forum chosen is not the plaintiff's home forum.  See Shawnee Tribe v. United States,

298 F.Supp.2d 21, 24 (D.D.C. 2002) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981)).

Courts also apply less deference when the chosen forum has an inadequate nexus to the events in

the case.  See Southern Utah Wilderness Alliance, 315 F. Supp.2d at 86.

      Plaintiff's choice of forum deserves little deference because he does not reside in this

District, and because this District lacks meaningful ties to the controversy.  Plaintiff resides in

Texas.  See Compl.¶ 11.  The Northern District of Texas is a more appropriate forum, because

that is where the decisions will be made.  As noted, the Texas Service Center is charged with

adjudicating Plaintiff's adjustment application.  See Walker Decl. ¶ 1, 2.  The named agency

defendants will have no direct involvement in the adjudication of that application.  Accordingly,

this case is similar to other cases in which courts have found that the private interests favor

transfer because the "primary issue in th[e] case" concerns a decision made by an agency field

office, and not headquarters.  Southern Utah Wilderness Alliance, 315 F. Supp.2d at 87; see, e.g.,

Rosales, 477 F. Supp. 2d at 216; Shawnee Tribe, 298 F. Supp.2d at 24; Sierra Club v. Flowers,

276 F. Supp. 62, 67 68 (D.D.C. 2003) (transferring case because federal officials in Florida made

the relevant decision and officials in Washington, D.C. were not involved in the decision making

process); see also Airport Working Group of Orange County, Inc. v. United States Dep't of

Defense, 226 F. Supp.2d 227, 230-31 (D.D.C. 2002) (transferring because connection to D.C.

was "attenuated" where D.C. officials were not actively involved in challenged decision).

Other private interest factors also support transfer. The Northern District of Texas is Defendants' choice of forum, and Defendants have legitimate reasons for the Court to transfer the case there. As noted, that district is the home jurisdiction of the Texas Service Center, which is charged with and is responsible for adjudicating Plaintiff's pending application. It is also in the state in which Plaintiff resides. Since this case involves activities taking place in the Northern District of Texas, there is local interest in resolving it there. See Schmidt v. American Institute of Physics, 322 F. Supp.2d 28, 36 (D.D.C. 2004) (holding that cases should be resolved in the locale in which they arise); Abusadeh, 2007 WL 2111036 at *8 (transferring case to jurisdiction where USCIS field office was located because of that district's interest in resolving the dispute). That also makes the Northern District of Texas a more convenient jurisdiction in which to litigate this case because the people directly involved in making the determination as to Plaintiff's application are located in Texas. See Walker Decl. ¶¶ 1, 2, 14.

The public interest also favors transfer. The relevant considerations include: the transferee's familiarity with governing laws, relative congestion of the calendars of the potential transferee and transferor courts, and local interests in deciding local controversies at home. See Trout Unlimited, 944 F. Supp. at 16 (citation omitted); Airport Working Group of Orange County, Inc., 226 F. Supp.2d at 229. Since this action concerns federal law, the Northern District of Texas is as familiar with the applicable law as the District of Columbia. In addition, there is no evidence that the Northern District of Texas's docket is significantly more congested than the District of Columbia's docket. See Trout Unlimited v. United States Dep't of Agriculture, 944 F.Supp. at 16; see also Exh. 5 (spreadsheet demonstrating caseload of both districts). In 2006 the districts had a similar number of pending cases (4,326 in the Northern

District and 4,114 in this Court), and civil cases in the Northern District were resolved more quickly than civil cases in this Court.  See Id.  Accordingly, both factors weigh in favor of the Court transferring this case to the Northern District of Texas.

The analysis in Abusadeh v. Chertoff is instructive here.  There, as here, the Plaintiff filed a mandamus complaint seeking to compel USCIS to complete its adjudication of a pending immigration application.  See 2007 WL 2111036 at *2.  The Plaintiff's application was pending in a local USCIS field office in Virginia.  See id. at *6.  Plaintiff filed suit in this District, and named agency officials with offices in Washington, D.C. as defendants.  See Id.  Judge Kollar-Kottelly concluded that Abusadeh's choice of forum was entitled to little deference because there were no meaningful ties between this District and pending immigration applications being adjudicated by a USCIS field office outside Washington, D.C.  See Id. at *6-*8.  Further, the public interests favored transfer because both districts were equally familiar with the applicable law but the Southern District of Texas had a "superior interest in addressing the instant controversy because 'there is a local interest in having localized controversies decided at home.'"  Id. at *8.  The same is true with respect to the Northern District of Texas here.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court GRANT Defendants' motion to dismiss or, in the alternative, TRANSFER this case to the Northern District of Texas.

Dated:  February 22, 2008                    Respectfully submitted,

                                                          /s/
                                             _____
                                             JEFFREY A. TAYLOR, D.C. BAR # 498610
                                             United States Attorney

_____/s/_____

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

_____/s/_____

BRANDON L. LOWY
Special Assistant United States Attorney
555 Fourth St., N.W.
Washington, DC  20530
Phone: (202) 307-0364 Fax: (202) 514-8780
Brandon.Lowy@usdoj.gov

Attorneys for Defendants

27

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

KASHIF AFTAB,                           )
                                    )
     Plaintiff,     )
                                    )
    v.               )
                                    )  Case Number: 1:07-CV-2080-RWR
EMILIO T. GONZALEZ, Director,            )
U.S. Citizenship and Immigration Services, et al.  )
                                    )
    Defendants.        )
_____)

## ORDER

Upon consideration of Defendants' Motion to Dismiss or Transfer, it is this _____ day of _____, 200_____,

_____ ORDERED that the Motion to Dismiss be and hereby is GRANTED, and that complaint be and hereby is DISMISSED;

_____ ORDERED that the Motion to Transfer be and hereby is GRANTED, and that the case be and hereby is TRANSFERRED to the United States District Court for the Northern District of Texas.

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE