UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

KASHIF AFTAB,                                      )
                                                   )
                        Plaintiff,                 )
                                                   )
            v.                                     )
                                                   )   Case Number: 1:07-CV-2080-RWR
EMILIO T. GONZALEZ, Director,                      )
U.S. Citizenship and Immigration Services, et al. )
                                                   )
                        Defendants.                )
_____         )

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR TRANSFER

Federal district courts lack jurisdiction to review mandamus or Administrative Procedure Act ("APA") "unreasonably delay" complaints which contend that United States Citizenship and Immigration Services ("USCIS") has taken too long to complete its review of an alien's application for permanent residency status. The contrary precedent on which Plaintiff relies reflects the minority view[1] among the judges in this District who have reviewed that jurisdictional issue, and is not binding upon this Court.[2] District Judges Bates, Leon, and numerous judges in other districts have dismissed similar complaints for lack of jurisdiction, reasoning that Congress has not authorized federal district courts to intervene in the adjudicative process and determine how much time USCIS should devote to assessing whether it should exercise its discretion to grant an alien permanent residency. See Orlov v. Howard, 523 F. Supp.

---

[1] Although Plaintiff contends the majority of judges in other districts have exercised jurisdiction, precedent suggests otherwise. See Wang v. Chertoff, 2007 WL 4139475, * 5 (N.D. Ga. Oct. 30, 2007) ("A *minority* of district courts in this and other circuits exercised jurisdiction to prevent 'unreasonable delays' in adjustment of status applications.") (emphasis added).

[2] Plaintiff mentioned four times in its Opposition that Defendants' Motion to Dismiss or In the Alternative to Transfer is untimely. Opp. at 1, 3-4. However, on March 18, 2008, by a Minute Order granting Defendants' Motion for an Extension of Time (Dkt. Entry 11), this Court ruled that Defendants' Motion to Dismiss or In the Alternative to Transfer (Dkt. Entry 15) is not untimely.

2d 30 (D.D.C. 2007); Luo v. Keisler, 521 F. Supp. 2d 72 (D.D.C. 2007); Wang v. Chertoff, 2007

WL 4139475, at *5 (N.D. Ga. Oct. 30, 2007) (noting that its holding was in line with the

majority of district courts).

Many of Plaintiff's arguments concern a hypothetical situation in which USCIS refuses to

process an adjustment of status application, or to take any action in connection with that

application.  However, this plainly is not such a case.  Instead, USCIS is processing Plaintiff's

application, and is assessing whether the adverse information related to him obtained by USCIS

from the Federal Bureau of Investigation ("FBI") name check renders Plaintiff inadmissible.  See

Walker Supplemental Declaration ("Walker Supp. Decl."), ¶¶ 6, 8.  Therefore, this is a case in

which the pace of USCIS's review of the application is inextricably intertwined with its

substantive assessment of Plaintiff's eligibility for adjustment of status.  Even Plaintiff cannot

dispute that USCIS has plenary discretion to grant or deny the application, and that its final

ruling on the application cannot be reviewed in federal courts.  That discretion necessarily

extends to USCIS's determination that it needs more time to complete its review of the eligibility

issues present in this case.  The discretionary nature of that assessment, and of the adjudicative

process as a whole, forecloses judicial review under the Immigration and Nationality Act, the

APA, and the Mandamus Act.

## ARGUMENT

**I.     SECTION 1252(A) OF THE IMMIGRATION AND NATIONALITY ACT FORBIDS REVIEW OF PLAINTIFF'S CLAIMS.**

As numerous district courts have recognized, Section 1252(a) of the Immigration and

Nationality Act ("INA"), 8 U.S.C. § 1252(a), deprives courts of jurisdiction over challenges to

the I-485 adjudication process.  See, e.g., Orlov, 523 F. Supp. 2d at 33-37;  Luo, 521 F. Supp. 2d

at 73-74 (granting motion to dismiss action to compel adjudication of plaintiffs' I-485s and citing

cases from other districts reaching same conclusion); <u>Sun v. Gonzales</u>, No. 07-504, Order

(D.D.C. Dec. 10, 2007) (<u>See</u> Reply Exh. 1); <u>Grinberg v. Swacina</u>, 478 F. Supp. 2d 1350 (S.D.

Fla. 2007); <u>Wang</u>, 2007 WL 4139475, at *5 (dismissing for lack of jurisdiction and citing cases

from other districts reaching the same conclusion); <u>Safadi v. Howard</u>, 466 F. Supp. 2d 696

(E.D.Va. 2006); Defendants' Motion to Dismiss or in the Alternative to Transfer ("MTD/MTT")

at 9-13 (analyzing statutory language and citing cases from other districts).  Section 1255(a) of

the INA provides that the "status of an alien… *may* be adjusted by the Attorney General, in his

discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted

for permanent residence."  8 U.S.C. § 1255(a) (emphasis added).[3]  Section 1252(a) expressly

withdraws judicial review of all discretionary USCIS actions or decisions concerning adjustment

applications and other immigration matters.  8 U.S.C. § 1252(a)(2)(B)(ii).  Plaintiff seeks judicial

review of USCIS's determination that the eligibility issues arising from his FBI name check

require further review, and asks the Court to issue an order forcing Defendants to conclude their

review of those issues and complete the adjudication.  <u>See</u> Compl. Prayer for Relief ¶ 1.  It

follows that section 1252(a)'s proscription against judicial review of any discretionary "act" or

"decision" forecloses review of Plaintiff's claims.

    Plaintiff advocates an exceedingly narrow interpretation of Section 1252(a)(2)(B), and

contends that this case does not involve a matter within USCIS's discretion.  Plaintiff also

ignores the evidence that USCIS is actively adjudicating his application, and suggests that this

case involves a refusal to adjudicate or process the application.  Finally, Plaintiff argues that the

Court should apply a presumption in favor of judicial review.  Those arguments lack merit.

---

[3] The Attorney General delegated that authority to USCIS, a component of the Department of Homeland Security.

**A. Plaintiff's Arguments Rest on an Incorrect Interpretation of Section 1252(a)(2)(B).**

**1. Congress Has Imposed No Limits on USCIS's Ability to Investigate an Alien's Eligibility for Permanent Resident Status Thoroughly.**

Plaintiff places undue emphasis on the phrase "specified. . . to be in the discretion of the Attorney General," 8 U.S.C. § 1252(a)(2)(B)(ii), and contends that Section 1252(a)(2)(B)(ii) is inapplicable because the text of Section 1255 does not permit USCIS to "enjoy unfettered discretion to unreasonably and … indefinitely delay adjudication of a properly filed application." Opp. at 11. However, the D.C. Circuit has declined to read Section 1252(a)(2)(B)(ii) so narrowly. See Zhu v. Gonzales, 411 F.3d 292, 294-95 (D.C. Cir. 2005) (rejecting argument that 1252(a)(2)(B)(ii) applies only to decisions which Congress has explicitly stated are matters of "discretion").

Section 1255 is worded broadly, and permits the Attorney General "in his discretion and under such regulations as he may prescribe," to adjust the status of an alien "to that of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1255(a). The explicit reference to "discretion" and use of the word "may" confirm Congress's intent to grant plenary authority to the Attorney General over adjustment applications.[4] See Zhu, 411 F.3d at 295-96 (discussing import of "may" and "discretion" when assessing scope of discretion granted by a statutory provision); Mahaveer, Inc. v. Bushey, 2006 WL 1716723, at *3 (D.D.C. June 19, 2006). When a statute confers such broad discretion, the relevant question is whether there is language withdrawing and/or expressly limiting that discretion — not whether there is additional language specifically articulating each type of decision encompassed within that grant of discretion. See Zhu, 411 F.3d at 296 (noting that plaintiffs could not point to language indicating that the decision being challenged had been withdrawn from the Attorney General's discretion).

---

[4] See supra, n.3.

4

Thus, under <u>Zhu</u>, the presumption is that DHS and USCIS have discretion over all aspects of the adjustment of status process unless the text of Section 1252(a)(2)(B)(ii) specifically constrains that discretion.[5]  As explained <u>supra</u>, legislative silence would support a ruling that the Court lacks jurisdiction, not that jurisdiction is present.  Nothing in Section 1252(a)(2)(B)(ii) purports to dictate the pace at which USCIS conducts its adjudications.  Nor does the statute limit USCIS's ability to devote time to thoroughly examine issues affecting an alien's eligibility, such as those that require USCIS to conduct further investigation beyond that of the standard FBI name check.  In sum, "Congress clearly intended to leave the pace of processing adjustment applications within the discretion of USCIS."  <u>Sun</u>, Order at 3 (Reply Exh. 1); <u>see</u> <u>Orlov</u>, 523 F. Supp. 2d at 35; <u>Luo</u>, 521 F. Supp. 2d at 74.

## 2. USCIS's Ongoing review of Plaintiff's Eligibility and the Remainder of the Adjudicative Process Constitute Agency "Action."

Plaintiff also argues that there has been no "decision" or "action" in this case, and that Section 1252(a)(2)(B)(ii) — which bars judicial review of any discretionary "action" or "decision" — is therefore inapplicable.  Opp. at 18, 24, 26, 30.  That argument is founded upon an unduly narrow definition of the word "action," which is inconsistent with the term's ordinary meaning and its usage in the APA.  It also fails to account for the fact that USCIS has been, and still is, actively reviewing Plaintiff's application.

The D.C. Circuit has endorsed reference to the ordinary usage of a word as a starting point for interpreting statutory language, and has held that courts may presume that Congress intended the common usage to apply.  <u>See</u> <u>Inner City Broad. Corp. v. Sanders</u>, 733 F.2d 154, 158 (D.C. Cir. 1984).  The "plain meaning of the word action . . . [is] 'an act or series of acts.'"

---

[5]  Although district judges in other jurisdictions have interpreted Section 1252(a)(2)(B)(ii) differently, <u>see</u> Opp. at 14, <u>Zhu</u> is the law of this Circuit and precludes reliance on those decisions.

Orlov, 523 F. Supp. 2d at 35 (quoting Safadi, 566 F. Supp. 2d at 699 (quoting Black's Law

Dictionary)).  The Administrative Procedure Act is even broader, and includes "failure to act" as

part of the definition of "agency action."  5 U.S.C. § 551(13); Orlov, 523 F. Supp. 2d at 37

(noting same).  Thus, given the absence of any language or legislative history to the contrary,

Section 1252(a)(2)(B)(ii)'s reference to discretionary "action" should be read as encompassing

the full adjudicative process.  It follows that the portions of the process in which USCIS is

actively reviewing eligibility issues constitute agency "action" to the same extent as other

portions of the process.  See Orlov, 523 F. Supp. 2d at 35-36 (concluding that agency action

included USCIS's decision to wait for results of background checks prior to completing

adjudication); Li v. Chertoff, 482 F. Supp. 2d 1172, 1178 (S.D. Cal. 2007) (concluding that "as

long as USCIS is making reasonable efforts to complete the adjudication, the pace required to

complete that process is committed to USCIS's discretion"); Grinberg v. Swacina, 478 F. Supp.

2d 1350, 1352 (S.D. Fla. 2007) (finding initiation of background checks was action).

     Some of the cases on which Plaintiff relies conclude that only the final ruling on an

application constitutes agency "action."   That narrow reading of the term "action" would render

portions of section 1252(a)(2)(B)(ii) superfluous.  See Luo, 521 F. Supp. 2d at 73-74; Orlov, 523

F. Supp. 2d at 36; Safadi, 466 F. Supp. 2d at 699.  Plaintiff does not appear to dispute that the

final ruling would be a "decision."  See Opp. at 11-14.  If those final rulings were the only

"actions" that are insulated from review, there would be no need to include the term "action" in

section 1252(a)(2)(B)(ii) in addition to the term "decision."  See Orlov, 523 F. Supp. 2d at 36.

     Moreover, Plaintiff's allegation that there has been no action on the case is factually

incorrect.  See Opp. at 3, 18, 26, 28, 30 and 34.  The Supervisory Adjudication Officer of the

Texas Service Center has explained the status of the adjudication in her sworn affidavit, which is

entitled to a presumption of good faith and has not been rebutted by Plaintiff.  <u>See</u> <u>Calton v.</u>

<u>Babbitt</u>, 147 F. Supp. 2d 4, 8 (D.D.C. 2001) (agency testimony afforded a presumption of good

faith).  USCIS last received a response to the FBI fingerprint checks on or around May 11, 2007.

<u>See</u> Walker Supp. Decl. ¶ 5.  USCIS electronically submitted a name check request to the FBI on

or around December 3, 2002, and the FBI completed that name check on September 21, 2006,

and it requires further investigation and evaluation.  <u>See</u> <u>id.</u> ¶ 6.  USCIS has also performed

preliminary checks against the DHS-managed Interagency Border Inspection System (IBIS),

which contains records and watch list information from over twenty federal law enforcement and

intelligence agencies.  <u>See</u> <u>id.</u> ¶ 4.  IBIS checks were first initiated on Plaintiff on December 3,

2002; these checks have been completed but need to re-done prior to final adjudication.  <u>Id.</u> ¶ 7.

Therefore, this is not a case in which Defendants have intentionally discarded or otherwise

refused to review or process an application.  The Court need not decide whether section

1252(a)(2)(B)(ii) would permit judicial review in those extreme circumstances in order to

determine whether jurisdiction exists in <u>this</u> case.

**B.  No Presumption of Judicial Review Attaches to this Case.**

      **1.  There is No Presumption of Review for Matters of National Security or**
          **Foreign Affairs**

Plaintiff's suggestion that this Court should apply a presumption in favor of judicial

review in this case, Opp. at 13-19, conflicts with D.C. Circuit precedent.  The D.C. Circuit has

recognized that "[w]hen it comes to matters touching on national security or foreign affairs . . .

the presumption of review runs aground."  <u>Bruno v. Albright</u>, 197 F.3d 1153, 1162 (D.C. Cir.

1999) (dismissing challenge to denial of visa for lack of jurisdiction).  Although the Court made

that statement in connection with a visa application, the same principles apply here.

This case clearly involves "matters touching on national security or foreign affairs." Bruno, 197 F.3d at 1162. For each applicant who applies for an adjustment of status, "USCIS conducts several forms of security checks to ensure that the alien is eligible for the immigration benefit and is not a risk to national security or public safety." Walker Supp. Decl. ¶ 4. Of these, the FBI name check "runs the alien's name against investigative and other databases of the FBI containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS[,]" which reveal criminal and suspected terrorist-related activity. Id. In many cases, adverse information related to an applicant or beneficiary that is obtained through a security check requires further vetting by USCIS. Id. at ¶ 8. In the instant case, "the FBI provided a name check response [to USCIS] on September 21, 2006, which requires further investigation and evaluation." Id. at ¶ 8.

Any sensitive issue — which is still being investigated — is the type of foreign policy and national security matter that traditionally has been entrusted to the executive branch. See generally Bruno, 197 F.3d at 1160. The Supreme Court has long recognized that "'any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations . . . [and] are so exclusively entrusted to the political branches of government as to be largely immune from judicial interference.'" Id. at 1159 (quoting Harisiades v. Shaughnessy, 342 U.S. 580, 588-89 (1952)); see generally Orlov, 523 F. Supp. 2d at 36 (acknowledging "the general rule that courts should refrain from interfering with matters of immigration and national security").

Plaintiff's reliance on I.N.S. v. St. Cyr, 533 U.S. 289, 298 (2001) is misplaced. In that case, the Supreme Court referenced the general presumption that administrative action is reviewable, but centered its analysis on the "longstanding rule requiring a clear statement of

congressional intent to repeal habeas jurisdiction." Id.; see also id. at 299-308 (discussing constitutional and historical significance of the writ).  Unlike St. Cyr, this case does not involve the writ of habeas corpus.  Accordingly, even if the constitutional protections that preserve habeas review may in some cases trump the presumption against judicial review of national security-related immigration matters, those protections are inapposite in this civil action.

### 2.    Cardinal Rules of Statutory Interpretation Support the Agency's Position

Plaintiff argues that certain principles of statutory construction argue in favor of narrowly construing § 1252(a)(2)(B)(ii) to mean that courts only lack jurisdiction to consider "whether to *grant* or *deny* an individual claim, not to whether the application should be  adjudicated in the first place."  Opp. at 11.  Yet the principles upon which he relies do not compel this unjustifiably narrow interpretation. Rather, two cardinal rules of statutory construction overlooked by Plaintiff demonstrate that the Court lacks jurisdiction to review more than merely the final step in the adjudicative process.

Plaintiff draws on three principles of statutory construction cited in Liu v. Novak, 509 F.Supp.2d 1 (D.D.C. 2007).  The first canon, that "Congress's intent to limit federal jurisdiction must be 'clear and convincing' in order to preclude judicial review" Id. at 7 (quoting Board of Governors of Federal Reserve System v. MCom Financial, Inc., 502 U.S. 32 (1991)), is satisfied here because the text of a statute may itself provide such evidence of Congress's intent to deprive the Court of jurisdiction. See e.g., Board of Governors, 502 U.S. at 44 ("[I]n this case the statute provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings."). As explained in Defendant's opening memorandum, the text of § 1252(a)(2)(B)(ii) plainly divests the Court of jurisdiction over the discretionary adjustment of status process. See 8 U.S.C.

§1252(a)(2)(B)(ii) ("Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . (ii) any other decision or action" that is specified to be in the discretion of the Attorney General).

The second principle, that there is a "strong presumption in favor of judicial review of administrative" action, Liu, 509 F.Supp.2d at 7 (quoting INS v. St. Cyr, 533 U.S. 289, 298 (2001)), is simply a presumption that, "like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent," Block v. Community Nutrition Institute, 467 U.S. 340, 349 (1984). The presumption is overcome here by the very specific, jurisdiction-depriving language of 1252(a)(2)(B)(ii). As the D.C. Circuit made clear, "[w]hen it comes to matters touching on national security or foreign affairs . . . the presumption of review runs aground." Bruno, 197 F.3d at 1162. Finally, the third rule of statutory construction cited by Plaintiff, that "courts construe ambiguities in deportation statutes in favor of the alien," Liu, 509 F.Supp.2d at 7 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987)), lacks relevance in this case because Mr. Aftab is not in removal proceedings.

Other canons of construction *not* cited by Plaintiff further support Defendant's argument. Plaintiff first overlooks the critically important "plain meaning" rule. See Orlov, 523 F.Supp.2d at 35 (citing Escobar v. U.S. Immigration & Naturalization Serv., 935 F.2d 650, 652-53 (4th Cir. 1991) ("The first step in the interpretive effort is to ascertain whether the language in issue has a plain and ordinary meaning, for there is a strong presumption 'that the legislative purpose is expressed by the ordinary meaning of the [statutory] words used.'") (quoting American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982)). As the Supreme Court has frequently reiterated, "[i]n a statutory construction case, the beginning point must be the language of the statute, and when a

statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 475 (1992) (citing Demarest v. Manspeaker, 498 U.S. 184, 190 (1991)). Here, the plain meaning of § 1252(a)(2)(B)(ii) deprives the Court of jurisdiction over Plaintiff's claims. As explained more fully in Defendant's MTD/MTT, the Agency has made an intermediate "decision" that it must continue evaluating Plaintiff's application because the results of certain checks require further inquiry. MTD/MTT at 11.  Moreover, the Agency is continuing to take "action" to resolve the outstanding issues.  Id. Because the authority for these decisions and actions is specified under 8 U.S.C. § 1255(a) to be within the discretion of the Attorney General, § 1252(a)(2)(B)(ii) – by its plain meaning – divests the Court of jurisdiction over Plaintiff's claims. See Orlov, 523 F.Supp.2d at 36 (finding that "because the adjustment process, including the pace of processing applications, falls within the discretion of USCIS, and because the pace of processing applications, including completing security checks, constitutes an 'action' under the plain meaning of the word, judicial review of plaintiff's claim is precluded by § 1252(a)(2)(B)(ii)") (emphasis added).

Second, it is also well-settled that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 357 (2005) (quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 711, n. 9 (2004)); see also Russello v. United States, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship."); New York v. U.S. E.P.A., 413 F.3d 3 (D.C. Cir. 2005) (applying this rule of statutory construction).  Although Plaintiff acknowledges that the Fourth

11

Circuit in <u>Obioha v. Gonzalez</u> was interpreting § 1252(a)(2)(B)(i), he argues that this Court should follow <u>Obioha</u>'s guidance and likewise interpret 8 U.S.C. § 1252(a)(2)(B)(ii) because "well-established principles of statutory construction support a narrower interpretation of the statute."  Opp. at 18; <u>see</u> <u>Obioha v. Gonzales</u>, 431 F.3d 400, 405 (4th Cir. 2005).

  In arguing that subsection (ii) should be interpreted to mean the same as subsection (i), Plaintiff would have the Court hold that two subsections that employ critically different language mean the same thing. Whereas subsection (i) narrowly deprives courts of jurisdiction over "any judgment regarding the granting of relief under" specified provisions, 8 U.S.C. § 1252(a)(2)(B)(i), subsection (ii) divests courts of jurisdiction broadly over "any other decision or action" the authority for which is specified in the subchapter to lie in the Attorney General's discretion.  § 1252(a)(2)(B)(ii).  In <u>Obioha</u>, the Fourth Circuit relied on both the word "under" and the phrase "regarding the granting of relief" to conclude that § 1252(a)(2)(B)(i) deprived the court of jurisdiction only over a decision on the merits of an enumerated provision. <u>Obioha</u>, 431 F.3d at 406 ("[A] natural reading of 'regarding the granting of relief' is consistent with the interpretation that it refers to a decision to grant relief on the merits of the provisions that follow.")  These words are absent from § 1252(a)(2)(B)(ii), and the more expansive phrase "any <u>other</u> decision or action" is used instead. 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

  Under the well-settled rule that "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended," <u>Jama</u>**,** 543 U.S. at 357, subsections (i) and (ii) must have different meanings. Given that subsection (i) has been read to be limited to decisions "on the merits," <u>Obioha</u>, 431 F.3d at 406, subsection (ii) must encompass a broader range of decisions or actions. Such decisions or actions include USCIS's decision that additional inquiry is needed before it can adjudicate Plaintiffs 1-485 application, which is a decision that is well within its discretionary powers under

8 U.S.C. § 1255(a). As noted in Defendant's MTD/MTT, the withdrawal of subject matter

jurisdiction in this regard is consistent with the well-established proposition that judicial review

in immigration matters is narrowly circumscribed, see Reno v. Flores, 507 U.S. 292 (1993), and

that control over immigration is largely entrusted to the political branches of the government, see

United States v. Valenzuela-Bernal, 458 U.S. 858, 864 (1982).

## II.    NEITHER THE MANDAMUS ACT NOR THE ADMINSITRATIVE PROCEDURE ACT PROVIDES SUBJECT MATTER JURISDICTION TO REVIEW PLAINTIFF'S CLAIMS.

As Plaintiff admits, there is no mandamus jurisdiction unless Defendants have a clear

duty to act and Plaintiff establishes a "clear right to relief." In re Medicare Reimbursement

Litigation, 414 F.3d 7, 10 (D.C. Cir. 2005); see Opp. at 22. The Mandamus Act does not provide

a remedy where, as here, the act that the plaintiff seeks to compel is discretionary. See Heckler

v. Ringer, 466 U.S. 602, 616 (1984). Even when those criteria have been met, "a court may

grant mandamus relief only when it finds 'compelling equitable grounds.'" In re Medicare

Reimbursement Litigation, 414 F.3d at 10.

Defendants have no "clear duty" to complete adjudication of Plaintiff's adjustment

application while questions remain concerning his eligibility for the benefit. Nor do they have

any clear duty to cut short their review and assessment of adverse information that may have

arisen from Plaintiff's FBI name check. Likewise, Plaintiff has no "clear right" to such relief.

As explained supra, USCIS has discretion over the entire adjudication process, including the

pace at which the adjudication is completed. Plaintiff bears the burden of persuading USCIS to

exercise its discretion in his favor, and has no entitlement to permanent residency status. See

Elkins v. Moreno, 435 U.S. 647, 667 (1978) (noting "adjustment of status is a matter of grace,

not right"); Randall v. Meese, 854 F.2d 472, 474 (D.C. Cir. 1988). In sum, because the timing of

the adjudication of Plaintiff's adjustment of status application is not "subject to positive

command, plainly described and free from doubt," Plaintiff cannot invoke mandamus

jurisdiction.  Rahman v. McElroy, 884 F.Supp. 782, 787 (S.D.N.Y. 1995).

There is no Administrative Procedure Act ("APA") jurisdiction for similar reasons.

Section 706(1), which permits review of complaints seeking to "compel agency action

unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), applies "only where a plaintiff

asserts that an agency failed to take a discrete agency action that it is required to take."  Norton

v. So. Utah Wilderness Alliance, 542 U.S. 51, 64 (2004) (emphasis in original).  Moreover,

Congress expressly removed agency actions "committed to agency discretion by law" from the

scope of the APA.  5 U.S.C. § 701(a)(2).  This Circuit has interpreted Section 701(a)(2) to mean

that a "plenary" grant of discretion renders agency actions unreviewable under the APA.

Secretary of Labor v. Twentymile Coal Co., 456 F.3d 151, 157 (D.C. Cir. 2006).  USCIS has

"plenary" discretion to carefully review the eligibility issues which arise from Plaintiff's FBI

name check because Congress has given it broad "discretion" over adjustment of status

applications.  See Orlov, 523 F. Supp. 2d at 35-38.  That discretion precludes Plaintiff from

asserting an APA claim.[6]  See id. at 37; see also, e.g., Safadi, 466 F.Supp.2d at 700; Zheng v.

Reno, 166 F. Supp.2d 875, 878-79 (S.D.N.Y. 2001); Karan v. McElroy, 2003 WL 21209769, at

*1 (S.D.N.Y. May 23, 2003) ("[B]ecause decisions regarding the plaintiff's immigration status

are committed to the discretion of the INS, this Court lacks the authority under . . . the APA to

grant the relief the plaintiff seeks."); see also Rahman, 884 F.Supp. at 787-88.

---

[6] Section 701(a) of the APA, which "withdraws [an APA] cause of action" to the extent another statute "precludes judicial review," also prevents Plaintiff from raising an APA challenge.  Block v. Community Nutrition Inst., 467 U.S. 340, 345 (1984).

Plaintiff's assertion that the APA itself gives USCIS a clear non-discretionary duty to act which is sufficient to trigger mandamus and APA jurisdiction is circular, and contrary to Norton v. Southern Utah Wilderness Alliance.  In Norton, the Supreme Court addressed, inter alia, the language in 5 U.S.C. §706(1), which provides that a reviewing court "shall . . . compel agency action unlawfully withheld or unreasonably delayed."  524 U.S. at 62.  The Court noted, with emphasis, that "the only agency action that can be compelled under the APA is action legally required."  Id. at 63 (emphasis in original).  The Court reasoned that the APA simply extended the traditional practice, prior to its passage, of achieving judicial review through a writ of mandamus, and that the mandamus remedy was normally confined to enforcement of "'a specific, unequivocal command.'"  Id. (quoting ICC v. New York, N.H. & H.R. Co., 287 U.S. 178, 204 (1932) and citing Kendall v. United States ex rel. Stokes, 12 Pet. 524, 613 (1838) ("precise, definite act . . . about which [an official] had no discretion whatsoever"));  accord Vermont Yankee Nuclear Power Corp. v. Nat. Res. Defense Council, Inc., 435 U.S. 519, 546 (1978) (§706[1] empowers a court only to compel an agency "to perform a ministerial or non-discretionary act").  The Court added that "a delay cannot be unreasonable with respect to action that is not required."  Norton, 524 U.S. at 63 n.1.  In sum, the APA does not provide a remedy unless Plaintiff can point to some independent statute or regulation that gives USCIS a mandatory non-discretionary duty to complete the adjudication at this time. As explained supra, there is no such regulation or statute, and USCIS is not "legally required" to complete the adjudication while eligibility issues remain pending, or to cut short its review and assessment of those issues.

## III.    THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS.

If every district court case involving an agency whose headquarters are located in Washington, D.C. were heard in this District, this Court's docket would quickly become unmanageable.  Accordingly, the D.C. Circuit closely scrutinizes venue arguments based solely on federal agency defendants' presence in the District of Columbia.  See Cameron, 983 F.2d at 256.  Even when such defendants' presence makes venue technically proper in this District, courts frequently invoke their discretionary transfer authority pursuant to 28 U.S.C. § 1404(a) and transfer cases to districts with a closer nexus to the parties' dispute.  See, e.g., Abusadeh v. Chertoff, 2007 WL 2111036, at *6-*9 (D.D.C. July 23, 2007) (transferring mandamus action seeking adjudication of adjustment of status application to Southern District of Texas because that was where the application was being adjudicated); Rosales v. United States, 477 F. Supp. 2d 213, 215-17 (D.D.C. 2007) (transferring case against federal agency to district in which the challenged events took place); Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 886-89 (D.D.C. 2005) (concluding environmental case should be transferred to Utah where D.C. officials only set general policies and did not make specific decisions being appealed); Joyner v. District of Columbia, 267 F. Supp. 2d 15, 20-21 (D.D.C. 2003) (holding that the case's only connection to Washington, D.C. was the situs of named federal government defendants and transferring to a district with which the case had several connections).

Section 1404(a) permits the Court to transfer this case to "any other district or division where it might have been brought" for the "convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  A threshold question is whether the case could have been brought in the district to which transfer is sought.  Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 613 (1964)).  Plaintiff concedes that

16

this action "might have been brought" in the Northern District of Texas.  See Opp. at 35.  Courts

then conduct a case-by-case analysis and balance the private interests of the parties with public

interests such as efficiency and fairness.  See id. at 7; Abusadeh, 2007 WL 2111036, at *3.  Both

the private and public interests favor transfer to the Northern District of Texas.  Therefore, this

case should be transferred to that court.

> **A**.    **The Northern District of Texas Is A More Appropriate Forum Because That is Where Plaintiff's Adjustment of Status Application is Being Adjudicated.**

Plaintiff's choice of forum deserves little or no deference because he is not a Washington,

D.C. resident, and because this District "lacks meaningful ties to the controversy."  Southern

Utah Wilderness Alliance, 315 F. Supp. 2d at 86; see Shawnee Tribe v. United States, 298 F.

Supp. 2d 21, 24 (D.D.C. 2002) (deference lessened when the forum chosen is not the plaintiff's

home forum); Abusadeh, 2007 WL 2111036, at *8 ("[i]t is therefore clear that Plaintiff's choice

of forum is entitled to significantly less than ordinary deference in light of the tangential

connection between Plaintiff's complaint and Washington, D.C.").  As explained in Defendants'

MTD/MTT and the declaration submitted therewith, federal officials in Dallas, Texas are

responsible for adjudicating Aftab's application for adjustment of status, and will make the final

decision regarding that application.  See MTD/MTT at 23; See Walker Declaration ("Walker

Decl."), ¶ 1.  Given that this case concerns decisions made at the Texas Service Center, the

District in which that field office is located is the appropriate forum for this suit.  See, e.g.,

Abusadeh, 2007 WL 2111036, at *6-*9 (transferring to district in which USCIS field office was

located); Sierra Club v. Flowers, 276 F. Supp. 62, 67-68 (D.D.C. 2003) (transferring case

because federal officials in Florida made the relevant decision and officials in Washington, D.C.

did not play an "active or significant" role in the decision-making process); Fayyaz v. Dep't of

Homeland Security, No. 06-2016 (D.D.C. Oct. 25, 2007) (unpublished Order) (transferring

mandamus action concerning I-485 to the Southern District of Texas because that is where

plaintiffs resided and the district in which the USCIS office with jurisdiction over their

applications was located) (Exh. 3, attached to Defendants' MTD/MTT).

The Northern District of Texas has a more significant interest in this case than this Court.

There is a local interest in resolving controversies where the relevant decisions are made. That

interest applies to "controversies requiring judicial review of an administrative decision" to the

same extent that it applies to cases involving real property or environmental issues. Abusadeh,

2007 WL 2111036, at * 8 (quoting Sierra Club, 276 F. Supp. 2d at 70). The administrative

decisions at issue in this case are being made in Dallas, Texas.

Perhaps recognizing that the location of the relevant USCIS decision makers is

dispositive of this venue dispute, Plaintiff goes to great lengths to suggest that the USCIS and

Department of Homeland Security ("DHS") headquarters maintain control of the files and will

adjudicate Plaintiff's adjustment of status application. Plaintiff also contends that the FBI is

conducting the name and fingerprint checks in West Virginia, and suggests that this supports

venue in this Court. Opp. at 33. Those arguments distort the relevant facts, and are

unpersuasive.

As Genize Walker has testified, the Texas Service Center is charged with adjudicating

Plaintiff's adjustment of status application. See Walker Decl. ¶ 4 (MTD/MTT at Decl. 1) (Dkt.

Entry 13). Ms. Walker's declaration, which was made under penalty of perjury, "is entitled to a

presumption of good faith." Calton, 147 F. Supp. at 8. As Supervisor Adjudication Officer for

the Texas Service Center, Ms. Walker has personal knowledge of the role that office plays in the

adjudication of Plaintiff's application. Ms. Walker has reviewed and investigated Plaintiff's

allegations that USCIS and/or DHS headquarters now have control of Plaintiff's adjustment of

status application, and found them to be false.  <u>See</u> Walker Supp. Decl. ¶ 3.  Although Plaintiff

claims repeatedly that if "the CIS Texas Service Center alone was responsible for moving

forward Plaintiffs application, the application would have been adjudicated long ago, as the

normal processing time for applications like the Plaintiffs at the Texas Service Center is eleven

months", the normal processing time indicated on the USCIS website reflects only average

processing times on the date the information is published for certain cases.  <u>Compare</u> Opp. at 4,

27-28, 32-33, 38 <u>with</u> Walker Supp. Decl. ¶ 9.  According to USCIS procedure, the average

processing time posted on the USCIS website does not apply to Plaintiff's application because it

is not "ready to be adjudicated."  <u>Id.</u>

Plaintiff asserts falsely that "the actions needed to move [Plaintiff's application forward]

will take place outside of Texas and in Washington, D.C., if this case truly involves national

security concerns…."  Opp. at 39.  However, this is not the case.  Not even the applicants for

adjustment who reside in Washington. D.C. and are subsequently interviewed attend those

interviews in the District of Columbia.  If an interview is necessary, Washington, D.C. residents

must travel to the Fairfax, Virginia Field Office, which is outside the jurisdiction.  <u>See</u> Walker

Supp. Decl. ¶ 12.  Therefore, there is no possibility that Plaintiff will be required to travel to

Washington, D.C. for the purpose of USCIS's further investigation.  Plaintiff's application is

being processed in Dallas, Texas.  <u>See</u> Walker Decl. ¶ 4.  If Plaintiff is required to visit CIS for

an interview, the interview will be located in the district office closest to his residence in Texas.

<u>See</u> Walker Supp. Decl. ¶ 12.  The fact that the contact information publicized for the Texas

Service Center is in Washington, D.C. is irrelevant because of the facts stated above.  <u>See</u> Opp.

at 39.

   **B.     The FBI Has No Significant Role In the Adjudicatory Process and the Location of FBI Officials Conducting Relevant Investigations Does Not Control the Venue Analysis.**

Plaintiff's allegations concerning the FBI's involvement in the national security investigation into Plaintiff's background also do not make venue proper in this Court. Plaintiff contends that the FBI conducts name checks and fingerprint checks in West Virginia, and that this case concerns delays in the FBI's investigation. See Opp. at 33. The documents Plaintiff attached to her opposition indicate that the FBI has a Criminal Justice Information Services complex in West Virginia, but do not establish that all FBI agents and/or employees involved in completing name check and background investigations are located at that complex. See id. Moreover, assuming arguendo that the name checks and background checks are the only aspects of the national security investigation that remain outstanding, the fact that some aspect of those checks might be performed by personnel in West Virginia would not make the District of Columbia an appropriate forum.

Most importantly, the FBI is not the agency that will adjudicate Plaintiff's application. The FBI conducts the background investigation and sends the results to USCIS. See Supp. Walker Decl. ¶¶ 4-6. But the FBI does not determine whether, when, or how the adjustment application will be adjudicated. Instead, the Texas Service Center monitors the FBI's completion of the background investigation, and that office will make the final decision on Plaintiff's adjustment application. See id. ¶ 3.

It bears noting that Plaintiff's complaint seeks an order compelling Defendants to complete the adjudication of her adjustment application. Neither Director Mueller nor any other FBI employee has authority to perform that function. Accordingly, the pace of their investigation is not the core issue in this case. Instead, "the action that Plaintiff seeks this Court

to compel is one that will occur in" Dallas, Texas.  Abusadeh, 2007 WL 2111036, at *6; see also

id. at *7 (concluding "the fact that the FBI . . . may play a role in the processing of Plaintiff's

application . . . does not alter the fact that the ultimate decision on Plaintiff's application for

naturalization . . . will be made" at the USCIS field office).

        C.      **The Remaining Public and Private Interest Factors Favor Transfer.**

        The remaining factors of the Section 1404 analysis also support transfer, for the reasons

set forth in Defendants' motion.  The Northern District of Texas has more cases than this Court,

but its cases appear to be resolved more quickly; the median time from filing to disposition of

civil cases is 7.4 months in the Northern District of Texas, compared to 10.2 months in this

Court.  See Exh. 5 (spreadsheets showing courts' caseload).  That court is as familiar with the

applicable federal law as this Court.  Although Plaintiff intimates that Defendants are "forum-

shopping," Opp. at 44, the Northern District of Texas has not been more favorable to

Defendants' position on the jurisdictional issues than this Court has been.  Compare Luo v.

Keisler, No. 07-0395, Mem. Op. at 4-6 (D.D.C. Nov. 14, 2007) (discussing Section

1252(a)(2)(B) and granting motion to dismiss action to compel adjudication of plaintiffs' I-485s)

(Reply Exh. 2) with Sozanski v. Chertoff, 2006 WL 4516968 (N.D.Tex. Dec. 11, 2006)

(dismissing complaint seeking to compel USCIS to complete adjustment of status adjudication

for lack of jurisdiction) and Ahmadi v. Chertoff, 522 F. Supp. 2d 816 (N.D. Tex. 2007)

(concluding court had jurisdiction to review complaint alleging unreasonable delay in

adjudicating adjustment of status application).  For all those reasons, Defendants request that the

Court exercise its discretion to transfer this action to the Northern District of Texas.[7]

---

[7]  Moreover, Defendants generally request that immigration mandamus actions concerning
applications being adjudicated by USCIS field offices outside of the Washington, D.C. area be
transferred to the district court with jurisdiction over the applicable field office.  See Abusadeh,

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' Motion to Dismiss or in the Alternative to Transfer, Defendants respectfully request that the Court GRANT Defendants' motion to dismiss and DISMISS the case for lack of jurisdiction.

Dated: April 21, 2008.                    Respectfully Submitted,


                                          ___/s/_____
                                          JEFFREY A. TAYLOR, D.C. BAR # 498610
                                          United States Attorney



                                          ___/s/_____
                                          RUDOLPH CONTRERAS, D.C. BAR #434122
                                          Assistant United States Attorney



                                          ___/s/_____
                                          BRANDON L. LOWY
                                          Special Assistant United States Attorney
                                          555 Fourth Street, NW
                                          Washington, DC 20530
                                          (202) 307-0364

                                          Attorneys for Defendants

---

2007 WL 2111036, at *1-*6 (transferring to the Southern District of Texas); No. 07-662 (D.D.C.) at Dkt. Entry 12 (seeking transfer to the Northern District of Texas); No. 07-1601 (D.D.C.) at Dkt. Entry 2 (same).

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JIANPING SUN,**<br><br>    **Plaintiff,**<br><br>        **v.**<br><br>**ALBERTO GONZALES, et al.,**<br><br>    **Defendants.** | **Civil Action No.  07-504  (JDB)** |

## <u>ORDER</u>

Plaintiff Jianping Sun, a native and citizen of the People's Republic of China, brings this action against the United States Department of Justice, the United States Citizenship and Immigration Services ("USCIS"), the United States Department of Homeland Security ("DHS"), the Federal Bureau of Investigation ("FBI"), and related officials within these departments. Plaintiff asks this Court to compel defendants to adjudicate without further delay his pending Form I-485 application for an adjustment of immigration status to become a lawful permanent resident.

Plaintiff filed his Application to Register Permanent Residence or Adjust Status (Form I-485) on April 24, 2004, along with a visa petition (Form I-140).  Petition ¶ 9.  After an alien applies for an adjustment of status, USCIS conducts a number of investigations to ensure that the alien is eligible for the benefit sought and is not a risk to national security.  <u>See</u> Decl. of Naboone Puripongs ¶ 2; Fact Sheet at 1.  Specifically, USCIS requests (a) an FBI fingerprint check for information relating to an applicant's criminal history within the United States; (b) a check against the DHS-managed Interagency Border Inspection System that "combines information

from multiple agencies, databases and system interfaces to compile data relating to national security risks, public safety issues and other law enforcement concerns"; and (c) an FBI name check, which reviews records maintained in "administrative, applicant, criminal, personnel and other files compiled by law enforcement." Fact Sheet at 2. USCIS also maintains the discretion and the authority to conduct other background investigations when necessary. Id.

According to the USCIS Fact Sheet regarding immigration security checks, "some cases legitimately take months or even several years to resolve" due to the complex, highly sensitive information that is involved in the process. Id. at 2-3. Yet, "USCIS will never grant an immigration service or benefit before the required security checks are completed regardless of how long those checks take." Id. at 1.

Plaintiff's fingerprints were taken and submitted on April 14, 2005. Petition ¶ 9. However, two background checks remain outstanding for plaintiff's application: the FBI name check and the national security background investigation. The FBI name check request for plaintiff was received by the FBI on May 18, 2004, and remains pending. See Decl. of Michael A. Cannon ¶ 22. Also, during the processing of plaintiff's application, USCIS requested a national security screening of plaintiff, which remains ongoing. See Decl. of Naboone Puripongs ¶¶ 8-9.

Believing USCIS has unreasonably delayed the adjudication of his adjustment of status application, plaintiff filed with this Court a petition for mandamus on March 14, 2007. Defendants have now moved to dismiss plaintiff's case for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. The issues in this matter are controlled by this Court's decision in Orlov v. Howard, Civil Action No. 07-350, issued on this

date.  The Court refers the parties to the memorandum opinion issued in <u>Orlov</u> for a full discussion of the issues.

Stated succinctly, this Court lacks jurisdiction to review the ongoing pace at which plaintiff's application is being adjudicated.  The Immigration and Nationality Act, 8 U.S.C. § 1255(a), provides that: "The status of an alien . . . <u>may be adjusted</u> by the Attorney General, <u>in his discretion</u> and under such regulations <u>as he may prescribe</u>, to that of an alien lawfully admitted for permanent residence if" certain conditions are met.[1]  In the absence of statutorily prescribed time limitations or statutory factors to guide USCIS in crafting regulations for the adjustment process, Congress clearly intended to leave the pace of processing adjustment applications within the discretion of USCIS.  Because 8 U.S.C. § 1252(a)(2)(B)(ii) divests federal courts of jurisdiction to review a discretionary decision or action of USCIS, and an "action" includes any discretionary act or series of acts within the adjustment of status process (including the pace of completing various security checks), this Court lacks jurisdiction over plaintiff's petition.[2]

---

[1]Although the text of 8 U.S.C. § 1255 refers to the Attorney General, the discretionary authority to adjudicate adjustment applications and promulgate regulations has been transferred to the Secretary of Homeland Security and the United States Citizenship and Immigration Services.  <u>See</u> 6 U.S.C. §§ 271(b), 557.  The Court will therefore refer to USCIS as the entity with discretionary authority.

[2]Section 1252(a)(2)(B), provides that:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
(i) any judgment regarding the granting of relief under section . . . 1255 [adjustment of status] . . . , or

The Administrative Procedures Act ("APA") also does not confer jurisdiction upon this Court to review plaintiff's claim because the APA does not apply where "statutes preclude judicial review" or "where agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(1), (2).  And finally, mandamus may not issue here because plaintiff has failed to demonstrate that defendants have a clear duty to increase the pace at which they are processing his application and because plaintiff has failed to demonstrate that he has a clear right to the relief sought.  See In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005) (explaining that "a district court may grant mandamus relief if '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff'") (quoting Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002)).

Accordingly, upon careful consideration of the motion and the parties' memoranda, the applicable law, and the entire record, and for the reasons stated in the memorandum opinion issued on this date in Orlov v. Howard, it is this 10th day of December, 2007, hereby

**ORDERED** that [8] defendants' motion to dismiss is **GRANTED**; and it is further

**ORDERED** that the case is dismissed against all defendants.

**SO ORDERED.**

                          /s/ John D. Bates
                          JOHN D. BATES
                        United States District Judge

---

(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV 1 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

TAO LUO, *et al.*,          )
                            )
        **Plaintiffs,**     )
                            )
        v.                  )   **Civil Case No. 07-0395 (RJL)**
                            )
PETER D. KEISLER*, *et al.*, )
                            )
        **Defendants.**      )

## MEMORANDUM OPINION
(November 9, 2007) [#5]

Plaintiffs, Tao Luo, his wife Peng He, and their minor child Mengming Luo, bring this action to compel defendants, the Department of Homeland Security ("DHS"), the United States Customs and Immigration Services ("USCIS"), and the Federal Bureau of Investigation ("FBI"), to approve pending Form I-485 applications for adjustment of status to become lawful permanent residents. Currently before this Court is defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the following reasons, the Court GRANTS defendants' motion.

---

* Pursuant to Federal Rule of Civil Procedure 25(d)(1), Acting Attorney General Peter D. Keisler is automatically substituted for former Attorney General Alberto R. Gonzales as a defendant in this case.



# BACKGROUND

Plaintiffs, nationals and citizens of China, filed the Complaint in this action on February 23, 2007, seeking to compel defendants to adjudicate plaintiffs' Form I-485 Application to Adjust Status to Permanent Resident (the "Application" or "Form I-485"). (Compl. ¶¶ 2, 7.)  The Application, filed on August 12, 2004, with the Vermont Service Center, USCIS, remains pending, as plaintiffs' national security background checks and plaintiff Tao Luo's name check have not been completed.[1]  (*Id.* ¶ 10; Mot. Dismiss at 2.) Plaintiffs claim that defendants have unreasonably delayed and have refused to adjudicate plaintiffs' Form I-485 applications.  (Compl. ¶ 16.)

# ANALYSIS

## I. Legal Standards

Under Rule 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Lindsey v. United States*, 448 F. Supp. 2d 37, 42 (D.D.C. 2006) (quoting *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)).  "The [C]ourt, in turn, has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Id.* at 42-43 (alteration in original) (quoting *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005)).

---

[1]  Plaintiff Peng He's name check was completed on March 3, 2005. (Mot. Dismiss at 2.)

## II. *Subject Matter Jurisdiction under the Immigration and Nationality Act*

The Immigration and Nationality Act ("INA") grants exclusive discretion to the Attorney General[2] to adjudicate adjustment of status applications.[3]  8 U.S.C. § 1255(a). Specifically, the statute provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief" of an adjustment of status or "any other *decision or action* of the Attorney General or the Secretary of Homeland Security [that is] in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B) (emphasis added).  Defendants argue that this provision, 8 U.S.C. § 1252(a)(2)(B)(ii), divests this Court of subject matter jurisdiction because it commits the entire application process to the discretion of the Attorney General.  Plaintiffs argue that the application process itself is not a "decision or action," and therefore, the discretion of the Attorney General does not extend to the timing of application processing.

Courts addressing this issue of whether § 1252(a)(2)(b)(ii) applies to the pace of processing adjustment of status applications have reached different conclusions.  Some, for example, have concluded for a variety of reasons that federal courts have no jurisdiction to review the pace at which adjudication occurs.  *See, e.g., Serrano v. Quarantillo*, 2007 WL 1101434, at *3 (D.N.J. Apr. 9, 2007) (holding that "[b]ecause the

---

[2]  Although the text of § 1255(a) gives the Attorney General the authority to adjudicate adjustment of status applications, that authority has been transferred to the Secretary of Homeland Security and his delegate in USCIS.  *See* 6 U.S.C. § 271(b)(5); 6 U.S.C. § 557.

[3]  8 U.S.C. § 1255(a) provides that "[t]he status of an alien . . . may be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien

3

pace of processing an adjustment application comprises a part of USCIS's 'action,' and because USCIS has discretion over such actions, there is no jurisdiction over plaintiff's complaint"); *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1178 (S.D. Cal. 2007) (holding that "as long as USCIS is making reasonable efforts to complete the adjudication, the pace required to complete that process is committed to USCIS's discretion"); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1353 (S.D. Fla. 2007) (holding that Congress intended to include the pace of processing an adjustment of status application within the Attorney General's discretionary function). Others, for a variety of reasons, have concluded the opposite. *See, e.g., Koren v. Chertoff*, 2007 WL 1431948 at *4 (D. Conn. May 14, 2007) (holding that committing the pace of adjudicating adjustment applications to the Attorney General's discretion, such that the entire process is out of the court's jurisdiction, is contrary to the general presumption in favor of judicial review); *Dmitriev v. Chertoff*, No. 06-07677, 2007 WL 1319533 at *3 (N.D. Cal. May 4, 2007) (holding that "action" refers to the specific decision to grant or deny an application, not the entire process of reviewing an application); *Linville v. Barrows*, 2007 WL 1544118, at *3 (W.D. Okla. Apr. 19, 2007) (holding that § 1252(a)(2)(B)(ii) does not preclude the court's jurisdiction because the timeliness of the process of adjudicating an adjustment application is not discretionary). For the following reasons, this Court finds that the analysis applied by Judge Ellis of the Eastern District of Virginia to dismiss a recent case for lack of jurisdiction is the best-reasoned approach and adopts that holding here. *See Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006).

---

lawfully admitted for permanent residence." 8 U.S.C. § 1255(a) (emphasis added).

In *Safadi*, Judge Ellis first found that the plain meaning of the word "action" in §
1252(a)(2)(B)(ii) includes any acts within the adjustment of status process (not just the
final determination), including the completion of background and security checks and the
pace at which the process proceeds. *Safadi*, 466 F. Supp. 2d at 699 (noting definition of
"action" is "an act or series of acts") (citing Black's Law Dictionary 28 (6th ed. 1990)).
Moreover, he concluded that limiting the term "action" to encompass only a final
decision "fails as it would impermissibly render the word 'action' superfluous" in the
phrase "decision or action." *Id.* at 700.

Further, Judge Ellis found that the absence of statutory time limits imposed by
Congress suggests that Congress intended to include the pace of the process as part of its
broad grant of discretion to the Attorney General in such matters. *Id.* at 699. "If
Congress had intended for the pace of adjudication of adjustment applications to be
subject to judicial review, it could have expressly offered a standard with which to
measure the lapse of time." *Zwang v. Chertoff*, 2007 WL 1753538, at *4 (W.D. Va. Jun.
19, 2007) (citing *Grinberg v. Swacina*, 478 F.Supp.2d 1350, 1352 (S.D. Fla.2007)
(same). Finally, and most importantly, the *Safadi* court noted that given the national
security implications of immigration regulation, the broad discretion afforded the
Attorney General permits the agency to adjudicate applications *only* after conducting a
careful and thorough investigation. *See Safadi*, 466 F. Supp. 2d at 701. Thus, in this
context, the Court's insertion into that process would be inappropriate and could be
detrimental to national security.

5

As such, because the pace of processing a status application constitutes an "action" within the meaning of the INA, it is unreviewable by this Court. Accordingly, plaintiffs' complaint is DISMISSED for lack of subject matter jurisdiction.[4]

## CONCLUSION

For all of the foregoing reasons, this Court GRANTS defendants' motion to dismiss. An appropriate Order consistent with this ruling accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[4] It is important to note that the other statutes invoked by plaintiffs cannot confer jurisdiction upon this Court to address plaintiffs' claims. First, the INA specifically precludes judicial review "notwithstanding any other provision of law," § 1252(a)(2)(B). Moreover, mandamus relief pursuant to 28 U.S.C. § 1361 is available only if defendant owes plaintiff a "clear nondiscretionary duty," *Ganem v. Heckler*, 746 F.2d 844, 852 (D.C. Cir. 1984); *see also Kauer v. Chertoff*, No. 06-765, 2007 WL 1560319 at *9 (D.D.C. May 31, 2007), and, because § 1255(a) prescribes no time limits for review of adjustment of status applications, defendants owe no such duty to plaintiffs. *Safadi*, 466 F. Supp. 2d at 700. Additionally, plaintiffs' claims pursuant to the APA fail because that statute exempts from judicial review an agency action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Finally, the federal question statute, 28 U.S.C. § 1331, cannot confer subject matter jurisdiction because a specific statutory bar on jurisdiction defeats a general grant of jurisdiction. *See Safadi*, 466 F. Supp. 2d at 700 (quoting *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 445 (E.D. Va. 2005)).

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Kashif Aftab, A95854775       Plaintiff,

v.                                              Civ. Act. Number: **07-02080**

Department of Homeland Security, et. Al

                              Defendants.

## SUPPLEMENTAL DECLARATION

I, Genize Walker, pursuant to 28 U.S.C. § 1746, hereby declare:

1.     I am currently employed as the Supervisory Center Adjudication at the Texas Service Center of U.S. Citizenship and Immigration Services (USCIS), an agency within the U.S. Department of Homeland Security (DHS). The Texas Service Center is located in Dallas, Texas.

2.     My current duties include the supervision of the adjudication of applications and petitions for immigration benefits. The subject matter of this declaration involves my official duties as an Assistant Center Director.

3.     In my capacity as Supervisory Center Adjudication Officer and based on my knowledge of the management of the Texas Service Center (TSC), information contained in the USCIS administrative file and other information supplied to me I have been delegated the authority to make declarations about the status of the Plaintiff's application and implement the procedures for processing background security investigations.

4.     When an applicant applies for adjustment of status, USCIS conducts several forms of security checks to ensure that the alien is eligible for the immigration benefit and is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these security checks currently include: (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the applicant (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS), which contains records and

"watch list" information from more than twenty federal agencies and which includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity; and (c) an FBI name check, which runs the alien's name against investigative and other databases of the FBI containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.    The three types of security checks described above sometimes raise issues impacting an applicant's eligibility for the benefit sought from USCIS.  In those cases, USCIS must conduct further inquiry to resolve any outstanding issues.

5.    USCIS last received a response to the FBI fingerprint checks on or around May 11, 2007.  These checks remain valid for 15 months after the response from the FBI is received.

6.    USCIS submitted the name check request to the FBI on or around December 3, 2002. This application is not impacted by the recent February 4, 2008 policy memo.  That memo addresses circumstances where the FBI name check results remain pending.  In this case, the FBI provided a name check response on September 21, 2006 which requires further investigation and evaluation.

7.    IBIS checks are initially conducted upon the filing of the application or petition. These checks remain valid for 180 days. These checks are completed at the office that is holding the file for adjudication, which in this case is the TSC. IBIS checks were first initiated on the applicant on December 3, 2002. These checks have been completed, but need to re-done prior to final adjudication.

8.    As stated in paragraph 12 of my prior declaration, in many cases, adverse information related to an applicant or beneficiary that is obtained through a security check requires further inquiry by USCIS (sometimes referred to as "vetting").  After USCIS conducts a comprehensive review of, and resolves, any identified criminal or national security issues, it completes the adjudication and issues a decision.

9.    USCIS reports average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times, on the date the information is published, for cases considered to be in the control of USCIS.   Cases considered to be within USCIS control are defined as those which are ready to be adjudicated. Cases outside the control of USCIS, and not counted in the net backlog include: cases that require further vetting following law enforcement security checks, cases in which the applicant has failed to respond to a request for additional evidence, and cases in which a visa number is not immediately available. Thus, the average processing times do not include the cases, like this one, which requires further vetting beyond that of the law enforcement security checks.

10.    The USCIS website at www.uscis.gov includes several advisories and public notices regarding processing delays that apply to all aliens, and the reasons for them. USCIS endeavors to give the best customer service possible to all customers, despite the

millions of applications and petitions pending, and within the constraints of resource limitations.

11.    In 2007, the USCIS received a record 1.4 million petitions for citizenship, more than the combined total for 2005 and 2006. In addition to the citizenship applications, USCIS received more than 6 million applications for other immigration services in 2007, including applicants for legal permanent residence. The USCIS is addressing the enormous increase in applications with substantial increases in staffing and overtime.

12.    If the applicant is scheduled for interview in the instant case, CIS would conduct the interview in the district office closest to his residence in Texas.  There is no district office in Washington D.C.  Applicants for adjustment residing in Washington, D.C. are interviewed, if necessary, in the Fairfax Virginia Field Office.

I declare under penalty of perjury, that the foregoing is true and correct.

_April 10, 2008_
Date

Genize Walker,
Supervisory Adjudication Officer
Texas Service Center